# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-3758

_____

Don M. Downing; Adam J. Levitt; Wolf Haldenstein Adler Freeman & Herz, LLC
on behalf of themselves and those similarly situated; Looper Reed & McGraw,
P.C. on behalf of themselves and those similarly situated; Gray Ritter & Graham,
PC on behalf of themselves and those similarly situated

*Plaintiff*s

v.

Riceland Foods, Inc.

*Defendant*

------------------------------

Riceland Foods

*Counter Claimant - Appellant*

v.

Don M. Downing; Adam J. Levitt

*Counter Defendants - Appellees*

------------------------------

Riceland Foods, Inc.

*Counter Claimant - Appellant*

v.

Don M. Downing; Gray Ritter & Graham; Adam J. Levitt, as Co-Trustee of the Common Benefit Trust Fund; Looper Reed & McGraw, P.C. on behalf of themselves and those similarly situated; Wolf Haldenstein Adler Freeman & Herz, LLC on behalf of themselves and those similarly situated

*Counter Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 22, 2015
Filed: January 14, 2016

_____

Before LOKEN, BENTON, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Plaintiffs, a group of attorneys who performed work on behalf of farmers in underlying multi-district litigation regarding genetically-modified rice, brought a class action suit against Riceland Foods, Inc. ("Riceland"), requesting the district court compel Riceland to contribute a portion of its recoveries in various cases to the common benefit fund established by the district court to compensate Plaintiffs for their work. In response to Plaintiffs' unjust enrichment and quantum meruit claims, Riceland counterclaimed, asserting breach of contract and tortious interference claims. The district court[1] dismissed Riceland's counterclaims and certified the dismissal as a final judgment under Federal Rule of Civil Procedure 54(b). Riceland

_____

[1]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

argues that this Court lacks jurisdiction to hear this appeal because the district court erred in certifying the dismissal as a final judgment under Rule 54(b). Riceland further contends that the district court erred in dismissing its counterclaims because a settlement agreement expressly released Riceland from Plaintiffs' claims because the claims "arise out of, accrue on account of, or grow out of" the presence of genetically-modified rice in the United States rice supply. We affirm.

I.

Beginning in 2006, hundreds of long-grain rice farmers and rice mills filed suit against Bayer CropScience ("Bayer") following an announcement by the United States Department of Agriculture ("USDA") that LLRICE, a genetically-modified rice which had not been approved for human consumption, had tainted the United States commercial long-grain rice supply. In more than two hundred LLRICE cases, Riceland was named as a defendant with Bayer. The cases were originally filed in multiple states, but were consolidated into a multi-district litigation ("MDL") case in the Eastern District of Missouri. See In Re Genetically Modified Rice Litigation, No. 4:06-MD-1811-CDP, 2010 WL 716190 (E.D. Mo. Feb. 24, 2010).

The district court appointed Plaintiffs Don Downing ("Downing") and Adam Levitt ("Levitt") as co-lead counsel for the MDL plaintiffs and created a "Plaintiffs' Executive Committee" consisting of six other attorneys. Collectively, these eight attorneys constituted the "MDL Leadership Group." The district court also ordered that a common benefit trust fund (the "fund"), with Downing and Levitt as co-trustees, be established to compensate attorneys for services performed for the benefit of all plaintiffs. The order required a portion of any recovery obtained by the plaintiff farmers in federal court to be contributed to the fund to pay fees and expenses of attorneys who performed work benefitting all of the plaintiff farmers. Contributions to the fund could also be made in related state court cases if so ordered by the state court, but the district court concluded that it lacked jurisdiction to order

-3-

contributions to the fund in state court cases. We affirmed the district court's establishment of the fund as well as the district court's jurisdictional ruling regarding state cases. See In Re Genetically Modified Rice Litig., 764 F.3d 864, 873 (8th Cir. 2014).

Following trial or settlement in the LLRICE cases, Bayer, the Negotiating Claimants' Counsel, and each Enrolled Claimant and Eligible Claimant entered into a Settlement Agreement.[2] The Settlement Agreement included a General Release of All Claims (the "Release"), in which each farmer ("Settling Claimant") and each farmer's attorney ("Settling Claimant Releasing Party") released their claims against Bayer. In the Release, Riceland was listed as an "Additional Released Party."

The Release provides, in relevant part, that the Settling Claimant and any Settling Claimant Releasing Party "hereby releases, acquits, and forever discharges" the Bayer Released Parties and Additional Released Parties, including Riceland, from:

> any and all claims, demands, causes of action, liabilities, sums of money, damages (including, but not limited to, punitive damages), loss of service, expenses, compensation, costs and losses, of any type, kind, nature, description or character whatsoever, whether based on tort, contract or other theory of recovery and including claims for contribution and indemnity, whether known or unknown, suspected or unsuspected, whether liquidated or unliquidated, which the Settling Claimant Releasing Parties, or any of them, now has or which may hereafter accrue on account of or in any way growing or arising out of

---

[2] The Settlement Agreement was a global producer settlement comprised of two separate settlements: (1) the MDL Settlement Agreement, which provided monetary recovery for farmer-plaintiffs in federal court cases; and (2) the "GMB Settlement Agreement," a settlement entered into by and among Bayer and four attorneys who are not involved in the present litigation, which provided monetary recovery for farmer-plaintiffs in state court cases.

the presence in the United States rice supply of Bayer GM Rice Seed, against any Bayer Released Party or any Additional Released Party (collectively, the "Settling Claimant Released Claims").

The Release also contains a clause which provides:

Settling Claimant, on Settling Claimant's behalf and all other Settling Claimant Releasing Parties, covenants and agrees that except to the extent provided herein Settling Claimant will not sue or bring any action or cause of action, including, without limitation, by way of third party claim, cross-claim or counterclaim, against any Bayer Released Party and/or Additional Released Party in respect of any Settling Claimant Released Claim.

In February 2013, Plaintiffs, consisting of the fund established by the district court and law firms whose attorneys were part of the MDL Leadership Group, filed the instant class action case against Riceland asserting claims for unjust enrichment and quantum meruit individually and "on behalf of all persons and entities that provided or paid for common benefit services, materials, and/or related expense items" in the MDL. Plaintiffs alleged that Riceland refused to contribute to the common-benefit fund despite being awarded a large recovery against Bayer in state court. Riceland counterclaimed, asserting that Plaintiffs' filing of this lawsuit constitutes breach of contract and tortious interference with the Release. Riceland also raised the terms of the Release as an affirmative defense.

Plaintiffs moved to dismiss Riceland's counterclaim. Concluding that Plaintiffs' claims do not, as a matter of law, "arise" or "grow" out of the presence of Bayer's LLRICE in the United States rice supply and are therefore not subject to the Release, the district court granted Plaintiffs' motion to dismiss Riceland's counterclaim. Riceland then sued the law-firm plaintiffs and additional law firms in Arkansas state court, asserting the same legal theories and facts presented in its counterclaim. Riceland sought an expedited trial schedule in the Arkansas state case,

prompting Plaintiffs to request an order from the district court certifying the dismissal of Riceland's counterclaim as a final judgment under Rule 54(b). Such an order presumably would bind Riceland in the Arkansas state court and compel dismissal of that case. Finding that Plaintiffs would suffer injustice if entry of final judgment were delayed, the district court certified the dismissal as a final judgment under Rule 54(b). Riceland appeals both the Rule 54(b) certification and the dismissal of its counterclaims.

## II.

Riceland raises two arguments on appeal: (1) this Court lacks jurisdiction to hear this appeal; and (2) the district court erred in holding that Plaintiffs did not release their claims against Riceland. We address each of these arguments in turn.

## A. Jurisdiction

We first address Riceland's argument that this court lacks jurisdiction because the district court abused its discretion in directing entry of final judgment pursuant to Rule 54(b). "This court independently reviews . . . appellate jurisdiction." Outdoor Cent., Inc. v. GreatLodge.com, Inc., 643 F.3d 1115, 1118 (8th Cir. 2011) (citing Matschiner v. Hartford Life & Acc. Ins. Co., 622 F.3d 885, 886 n. 1 (8th Cir. 2010) ("We independently review whether the district court's Rule 54(b) determination that there was 'no just reason for delay' properly conferred appellate jurisdiction under 28 U.S.C. § 1291." (quoting Interstate Power Co v. Kansas City Power & Light Co., 992 F.2d 804, 806-07 (8th Cir. 1993)))). In reviewing Rule 54(b) determinations, we apply an abuse of discretion standard and "largely defer[] to the district court's weighing of the equities, but more closely scrutinize[] the analysis of judicial administrative interests." Id. at 1118-19. Appellate courts leave the determination of the "appropriate time when each final decision in a multiple claims

-6-

action is ready for appeal" to the "sound judicial discretion of the district court." Curtiss-Wright Corp. v. Gen. Elec. Co., 446 U.S. 1, 8 (1980).

Generally, we only consider orders that dispose of all claims as final and appealable under 28 U.S.C. § 1291. Williams v. Cnty. of Dakota, Neb., 687 F.3d 1064, 1067 (8th Cir. 2012). "Rule 54(b) creates a well-established exception to this rule by allowing a district court to enter a final judgment on some but not all of the claims in a lawsuit." Id. (quoting Clark v. Baka, 593 F.3d 712, 714 (8th Cir. 2010) (per curiam)). We have established that the district court must undertake a two-step analysis when deciding whether to certify an order under Rule 54(b). See id. at 1067-68. The court "must first determine that it is dealing with a final judgment . . . in the sense that it is an ultimate disposition of an individual claim." Id. at 1067 (quoting Outdoor Cent., 643 F.3d at 1118). Second, the district court must determine whether a just reason for delay exists. Id. In making such determination, "the district court must consider both the equities of the situation and judicial administrative interests, particularly the interest in preventing piecemeal appeals." Id. (citation and quotation marks omitted). It is a long-standing rule of the Eighth Circuit that "[c]ertification should be granted only if there exists some danger of hardship or injustice through delay which would be alleviated by immediate appeal." Hayden v. McDonald, 719 F.2d 266, 268 (8th Cir. 1983) (per curiam) (citation and quotation marks omitted).

In Hayden, we identified several factors that should be considered in determining whether danger or hardship through delay exists:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in setoff against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency

-7-

considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

719 F.2d at 269 (quoting Allis-Chalmers Corp. v. Phila. Elec. Co., 521 F.2d 360, 364 (3d Cir. 1975)).

After noting that the first step of this Court's two-step analysis of Rule 54(b) determinations was satisfied because Riceland's counterclaims were dismissed in their entirety, the district court analyzed whether a just reason existed to deny certification of the order for appeal.

First, the district court examined the relationship between the adjudicated and unadjudicated claims. The court noted that Plaintiffs' claims involve facts "surrounding their work on behalf of the individual MDL plaintiffs, Riceland's use of that work, this court's common-benefit orders, and Riceland's refusal to contribute to the Fund," all of which occurred prior to the filing of this case. On the contrary, Riceland's counterclaims required "an interpretation of the Release and an analysis of whether, by bringing this case, plaintiffs breached or interfered with that contract." We agree with the district court's conclusion that the theories and facts in Plaintiffs' claims and Riceland's counterclaims are distinct from one another; thus, the first factor weighs in favor of certification under Rule 54(b). Despite its argument that Rule 54(b) certification is inappropriate, Riceland fails to demonstrate how the need for review might be mooted by future developments in district court. Furthermore, because Plaintiffs' claims are distinct from Riceland's counterclaim, there is no possibility that a reviewing court might be obliged to consider the "same issue a second time." Riceland's argument that its unadjudicated affirmative defenses mirror its dismissed counterclaims is without merit because Plaintiffs' claims rely on facts and legal theories that are entirely separate from those relied upon by Riceland's counterclaim. Therefore, the second and third factors also weigh in favor of certification. Next, given that no money judgment has been entered in favor of either

party, no potential for setoff exists, tipping the fourth factor in favor of certification as well.

Finally, the fifth factor allows for the consideration of "miscellaneous factors." Riceland argues that res judicata considerations, standing alone, are insufficient to support Rule 54(b) certification. In support of its contention that res judicata may only be considered if the certification is "otherwise permissible," Riceland cites a Ninth Circuit case, Cont'l Airlines, Inc. v. Goodyear Tire & Rubber Co., 819 F.2d 1519 (9th Cir. 1987). Riceland extracts the language "[w]e do not wish to encourage the district courts to use their 54(b) powers to promote a race to judgment or to snatch from the state courts a dispute being properly litigated there" to argue that final judgment may not be entered under Rule 54(b) solely to give an order preclusive effect in a state court proceeding. Cont'l Airlines, 819 F.2d at 1525 (internal citation and quotation marks omitted). However, in considering whether a Rule 54(b) certification may be granted for the purpose of producing a res judicata effect in another proceeding, the Ninth Circuit pointed out that two other circuits had suggested certification may be granted for such a purpose. Id. (citing Bank of Lincolnwood v. Fed. Leasing, Inc., 622 F.2d 944, 949 n. 7 (7th Cir. 1980) (stating in dicta that "no just reason for delay" includes not only delay of appeal but delay of res judicata); Republic of China v. American Express Co., 190 F.2d 334, 339 (2d Cir. 1951) (indicating the district court should have made a Rule 54(b) certification to assure res judicata)). In fact, the Ninth Circuit expressly declined to hold that a judgment's res judicata effect is an improper consideration in determining whether to certify the judgment for appeal under Rule 54(b). Id. Instead, it recognized that "[b]ecause a 54(b) ruling in fact has res judicata ramifications, which are potentially very important, it would be unsound and ineffectual to hold that the district courts may not consider this factor in deciding for or against certification." Id. The Second Circuit later held that "[t]here is no justification for limiting the issues that a district court can consider in entering a partial final judgment, nor is it realistic to ask a

district court to approach the decision while blinding itself to one of the decision's most important effects." Shamley v. ITT Corp., 869 F.2d 167, 170 (2d Cir. 1989).

Here, the district court found that Plaintiffs and the district court itself would suffer injustice if entry of final judgment was delayed. The significant resources spent on the case were "at risk of being obviated by a ruling in the later filed Arkansas case" according to the district court. Significantly, it is undisputed that Riceland attempted to try the Arkansas state case before the district court's ruling on its counterclaims could become binding on the state court.[3]

We agree with the other circuits to address the issue and hold that a res judicata effect can properly be considered as a "miscellaneous factor" under the Hayden factor analysis. The district court did not err in considering the res judicata ramification in the Arkansas state court case. Because each factor weighs in favor of Rule 54(b) certification, we find no just reason for delaying entry of judgment and affirm the district court's decision to certify the dismissal of Riceland's counterclaim as a final judgment under Rule 54(b).

## B. Riceland's Counterclaim

We now turn to Riceland's argument on the merits, in which it contends the district court erred in holding, as a matter of law, that Plaintiffs did not release their claims against Riceland. We review the district court's dismissal under Rule 12(b)(6) de novo. O'Neil v. Simplicity, Inc., 574 F.3d 501, 503 (8th Cir. 2009). The parties do not dispute that Arkansas law governs the interpretation of the Settlement

---

[3]Federalism cases may aid in determining when certification could improperly interfere with state court proceedings. See Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 717 (1996) (listing cases in which state interests counsel against federal court interference).

-10-

Agreement because a choice of law provision in the Settlement Agreement requires it be construed according to the laws of that state.

Riceland first argues that the district court erred by requiring a strict causal nexus between Plaintiffs' claims and LLRICE contamination even though the Release language did not require such a causal connection. Riceland contends that Arkansas law requires a broad interpretation of the Release, citing Hisaw v. State Farm Mut. Auto. Ins. Co., 122 S.W.3d 1, 6 (Ark. 2003) and State Farm Mut. Auto. Ins. Co. v. LaSage, 559 S.W.2d 702, 703 (Ark. 1978) for the proposition that the phrase "arising out of" should be interpreted very broadly. Riceland also points to the Arkansas Court of Appeals case McGarrah by McGarrah v. Sw. Glass Co., 852 S.W.2d 328, 331 (Ark. Ct. App. 1993) (en banc) and argues that the phrases "arising out of" necessitates "but for" causation. Thus, according to Riceland, because Plaintiffs' claims ultimately would not exist "but for" the LLRICE contamination, the Release applies. However, the Arkansas Supreme Court explicitly rejected the use of broad, "but for" causation in interpreting the phrase "arising out of" in Hisaw. 122 S.W.3d at 6-7. The Court concluded that a "but for" analysis was not appropriate for determining the meaning of the phrase "arising out of" in the context of an automobile insurance policy, reasoning that:

> [a] distinguished treatise has challenged the workability of the "but for" principle and said: "The event without millions of causes is simply inconceivable, and the mere fact of causation, as distinguished from the nature and degree of the causal connection, can provide no clue of any kind to singling out those which are to be held legally responsible." We agree. A but-for causation analysis would bring into play a multitude of causes and would be largely unworkable for interpreting the policy language at issue.

Id. at 6 (citing W. Page Keeton, et. al., Prosser & Keeton on the Law of Torts, § 41 (5th ed. 1984)).

-11-

Because Arkansas law has only addressed the causation required for the relevant language in the insurance context, the district court determined that it must look to the contract as a whole. Under this approach, Riceland argues the Release is all-inclusive, pointing to <u>A.G. Edwards & Sons, Inc. v. Myrick</u>, 195 S.W.3d 388 (Ark. Ct. App. 2004). Riceland contends that the terms "any," "all," and "whatsoever" are "routinely described as 'all inclusive.'" However, <u>A. G. Edwards</u> did not hold that the terms "any," "all," and "whatsoever," are "all inclusive;" rather, it merely concluded that the specific phrase "any controversy" used in the contract at issue was "clear and unambiguous language." 195 S.W.3d at 391-92.

When we look to the plain language of the Release, it is clear that the language used was not intended to protect Riceland from litigation related to its refusal to contribute to the fund. <u>See</u> <u>Douglas v. U.S. Tobacco Co.</u>, 670 F.2d 791, 795 (8th Cir. 1982) (noting that under Arkansas law, a release is construed "in accordance with the plain meaning of the language employed" (quoting <u>Green v. Ferguson</u>, 567 S.W.2d 89, 91 (Ark. 1978))). The plain language of the Release included a clause absolving the Bayer Released Parties from litigation-related claims: "This Release shall also release the Bayer Released Parties and their attorneys from any and all claims . . . related to the conduct of the Bayer Released Parties and/or their attorneys in the prosecution or defense of any claim being released hereby." No such clause existed in the section of the Release addressing Riceland or the Additional Released Parties. As the district court recognized, "when reading this clause in tandem with the paragraph releasing both Bayer and Riceland, it becomes clear that the drafters did not consider claims 'related to' Bayer's rice-litigation conduct to 'arise' out of the presence of Bayer's rice in the U.S. market. Had that been the drafter's intent, this clause would have been unnecessary." The litigation-specific release language included in the section specific to the Bayer Released Parties would be superfluous if Riceland's interpretation is applied. <u>See</u> <u>Byme, Inc. v. Ivy</u>, 241 S.W.3d 229, 236 (Ark. 2006) ("In seeking to harmonize different clauses of a contract, we should not give effect to one to the exclusion of another even though they seem conflicting or

contradictory, nor adopt an interpretation which neutralizes a provision if the various clauses can be reconciled" (quoting <u>Sturgis v. Skokos</u>, 977 S.W.2d 217, 223 (Ark. 1998))). The inclusion of the word "also" in the litigation-specific release indicates that the litigation-specific release for Bayer Released Parties is in addition to the general release language that applied to both Bayer and Riceland.

While we agree that the Release language is broad, the subject matter of the Release is different from the subject matter of the present lawsuit, which is Riceland's failure to contribute to the fund. The claims regarding genetically-modified rice were released by the Settlement Agreement and Release, but the Release does not govern the Plaintiffs' unjust enrichment and quantum meruit claims against Riceland for its failure to contribute to the fund. We therefore affirm the district court's dismissal of Riceland's counterclaims.

## III.

For these reasons, we affirm the district court's dismissal of Riceland's counterclaims as well as the certification of such dismissal as final under Rule 54(b).

_____