# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-3312
_____

United States of America

*Plaintiff - Appellee*

v.

Donald Boman

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: January 31, 2017
Filed: October 20, 2017

_____

Before SMITH,[1] MURPHY, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

A jury convicted Donald Boman of possessing a firearm and ammunition as a felon. The district court sentenced him to 262 months in prison. Boman appealed to this court, raising a number of arguments, including that the district court erred in

_____

[1] The Honorable Lavenski R. Smith became Chief Judge of the United States Court of Appeals for the Eighth Circuit on March 11, 2017.

classifying him as an Armed Career Criminal under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). We affirmed the district court. United States v. Boman, 810 F.3d 534 (8th Cir. 2016). Boman petitioned for writ of certiorari, and the Supreme Court granted the petition, vacated the judgment, and remanded for further consideration in light of Mathis v. United States, 136 S. Ct. 2243 (2016). Boman v. United States, 137 S. Ct. 87 (2016) (Mem.).

I.

On November 2, 2013, Cedar Rapids Police Officers responded to a 911 call regarding a shooting. Once the officers arrived at the scene of the shooting, Officer Zach Jeffries spoke with Marcus Brown, who was walking across the street and "thought he had been shot." After conducting a pat-down of Brown, Officer Jeffries determined Brown had not been shot nor did Brown have any weapons.

Next, Officer Jeffries spoke with witnesses at the scene of the incident. From those conversations, Officer Jeffries learned the suspected shooter, Boman, was located inside the residence at 1800 Ridgewood Terrace Southeast. Sergeant Steven Yardly contacted Boman, and Boman walked out of the residence. Officer Jeffries then handcuffed Boman and placed him in the back of his squad car.

Jamie Cooper, Boman's girlfriend, lived with Boman and arrived at the scene shortly thereafter. At that time, Cooper consented to the police officers' search of her home. During the search, Cooper was cooperative and directed the officers to her bedroom dresser, which is where she said a firearm would be located. Cooper shared the bedroom with Boman. The officers located the firearm and two boxes of ammunition. One box contained fifty rounds of ammunition and the other box contained forty rounds of ammunition. The magazine in the firearm was missing one round.

Cooper's daughters, Cheyenne Cinkan and Jade Hasson, also lived at the residence, along with Cinkan's children. Cinkan thus had two connections to the relevant actors in this case because Brown was her boyfriend. Because Brown had physically abused Cinkan, she had recently moved to the residence shared by Boman and Cooper. In fact, earlier on November 2, 2013, Brown and Cinkan got into an argument at Boman's and Cooper's home. Soon thereafter, the argument ensued between Boman and Brown.

Sarah Michaels testified to witnessing the altercation. She said it involved two African American men, one taller than the other. The shorter man yelled from across the street, "Do it nigger! Do it nigger!" The taller African-American man then ran across the street, hit the other man, reached for his hip, and pointed his hand at the man on the ground. Michaels then heard a pop noise.[2] Michaels and Cinkan called 911 following this incident.

On March 18, 2014, a grand jury returned a one-count superseding indictment against Boman charging him with unlawfully possessing a firearm and ammunition as a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Following a two-day jury trial, the jury found Boman guilty of possessing a firearm as a felon. The initial Presentence Investigation Report ("PSR") recommended a four-level sentence enhancement, pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2K2.1(b)(6)(B), and determined that Boman qualified as an Armed Career Criminal under the ACCA. Boman objected to the enhancement and his status as an Armed Career Criminal. As to his status under the ACCA, Boman argued that his prior convictions were not separate and distinct criminal episodes. The district court overruled Boman's objections and calculated a Guidelines range of 262–327 months' imprisonment. Ultimately, the court sentenced Boman to 262 months' imprisonment.

---

[2] Two other witnesses testified at Boman's trial that they heard a single loud noise on the afternoon of November 2, 2013.

On appeal, Boman raised five arguments. In his first three arguments, Boman challenged the district court's evidentiary rulings. First, Boman claimed the district court improperly excluded the introduction of "reverse" Federal Rule of Evidence 404(b) evidence relating to a criminal conviction of the victim, Marcus Brown. Second, Boman argued the district court improperly excluded evidence relating to proof of Brown's motive and bias against Boman under Federal Rule of Evidence 403. Third, Boman asserted the district court improperly admitted Brown's 911 phone call under the excited-utterance exception of Federal Rule of Evidence 803(2). We held that the district court did not abuse its discretion in making these evidentiary rulings. Boman, 810 F.3d at 538–41. These holdings were not disturbed by the Supreme Court's remand.

Boman's last two arguments raised sentencing issues. First, Boman challenged his status as an Armed Career Criminal. Initially, he argued that his prior convictions under 18 U.S.C. § 924(c)(1) for Use of a Firearm During the Commission of a Violent Crime were not separate and distinct criminal episodes, as required by the ACCA. In a supplemental brief, however, Boman relied on the Supreme Court's opinion in Johnson v. United States, 135 S. Ct. 2551 (2015), to argue that his prior convictions were not predicate offenses under the ACCA because they were not "violent felonies" as defined in 18 U.S.C. § 924(e)(2)(B)(i). Applying the modified categorical approach, we held that Boman's convictions qualified as violent felonies. Boman, 810 F.3d at 541–43. We also held that Boman's convictions were "discrete criminal episodes." Id. at 543–44.

Boman's second sentencing argument challenged the four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) for use or possession of a firearm or ammunition in connection with another felony offense. Boman argued that the enhancement was improper because the government did not prove by a preponderance of the evidence that Boman committed a felony offense and did not disprove Boman's justification

defense. We did not address these arguments because, due to Boman's status as an Armed Career Criminal, the enhancement did not affect his sentence. Id. at 544.

Boman filed a petition for writ of certiorari with the Supreme Court. Following the Court's decision in Mathis, which rejected this court's approach to divisibility, the Court granted Boman's petition and remanded the case. On remand, our focus is limited to whether Boman's prior convictions under 18 U.S.C. § 924(c)(1) qualify as violent felonies under the ACCA. Because we conclude they do not qualify, we must also address whether the district court erred in applying the four-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(6)(B).

II.

A. Armed Career Criminal

Normally, "[w]e review de novo whether a prior conviction is a predicate offense under the ACCA." United States v. Abbott, 794 F.3d 896, 897 (8th Cir. 2015) (per curiam) (quoting United States v. Humphrey, 759 F.3d 909, 911 (8th Cir. 2014)). Because, however, Boman did not object to his status under the ACCA on the basis now before us, we review for plain error. See United States v. Pirani, 406 F.3d 543, 549 (8th Cir. 2005). To succeed on plain error review, Boman must show: (1) an error; (2) the error is plain; (3) the error affects his substantial rights; and (4) "the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" United States v. Olano, 507 U.S. 725, 732 (1993) (alteration in original) (quoting United States v. Young, 470 U.S. 1, 15 (1985)).

At sentencing, the district court found Boman was an Armed Career Criminal because he had three prior convictions for violent felonies. See 18 U.S.C. § 924(e). Boman has a 1995 conviction for Assault within Maritime and Territorial Jurisdiction, which he concedes is a violent felony under the ACCA. Boman argues, however, that

his two 1992 convictions under § 924(c)(1) do not qualify as predicate offenses under the force clause of the ACCA, 18 U.S.C. § 924(e)(2)(B)(i).

In 1992, § 924(c)(1) stated:

> Whoever, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years . . . .

Section 924(c) is a predicate offense under the ACCA only if it meets the force clause of the ACCA's definition of violent felony. Under that clause, a prior offense is a violent felony if it "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i).

To determine if a prior conviction is a violent felony under the ACCA, courts look to the elements of the crime of conviction, not the underlying facts. See Mathis, 136 S. Ct. at 2248. If a statute lists alternative methods of committing a crime, courts must determine if the alternatives are elements or means. Id. at 2256. "'Elements' are the 'constituent parts' of a crime's legal definition—the things the 'prosecution must prove to sustain a conviction.'" Id. at 2248 (quoting Black's Law Dictionary 634 (10th ed. 2014)). In contrast, "means" "need neither be found by a jury nor admitted by a defendant." Id. "If they are elements, the court should do what we have previously approved: review the record materials to discover which of the enumerated alternatives played a part in the defendant's prior conviction . . . . But if instead they are means, the court has no call to decide which of the statutory alternatives was at issue in the earlier prosecution." Id. at 2256.

The elements of § 924(c)(1) are: (1) the use or carrying of a firearm; (2) during and in relation to a crime of violence or drug trafficking crime. United States v. Rodriguez-Moreno, 526 U.S. 275, 280 (1999). In this case, Boman argues that the second element is indivisible, and that "crime of violence" and "drug trafficking crime" describe alternative means. Specifically, Boman contends they are means because a judge rather than a jury determines whether the underlying offense is a crime of violence or drug trafficking crime. It is true that "an ACCA penalty may be based only on what a jury 'necessarily found' to convict a defendant (or what he necessarily admitted)." Mathis, 136 S. Ct. at 2255 (quoting Descamps v. United States, 133 S. Ct. 2276, 2287, 2290 (2013)). However, even if a judge determines whether the underlying offense is a crime of violence or drug trafficking offense, the jury still must find "that [the defendant] committed all the acts necessary to be subject to punishment for" the underlying offense. Rodriguez-Moreno, 526 U.S. at 280.

In addition to considering whether a judge or jury makes the findings, courts may also look to the statute of conviction or, if necessary, "peek at the [record] documents . . . for the sole and limited purpose of determining whether [the listed items are] element[s] of the offense." Mathis, 136 S. Ct. at 2256–57 (alterations in original) (quoting Rendon v. Holder, 782 F.3d 466, 473–74 (9th Cir. 2015)); see also United States v. McFee, 842 F.3d 572, 575 (8th Cir. 2016). The language of § 924(c)(1) is not particularly helpful in determining whether the statute lists alternative means or elements. Though crime of violence and drug trafficking offense are separated by the disjunctive "or," "the use of the word 'or' in a statute merely signals that we must determine whether the alternatives are elements or means; it is not determinative one way or another." United States v. McMillan, 863 F.3d 1053, 1058 (8th Cir. 2017). In this case, a peek at the record supports a finding that § 924(c)(1) contains alternative elements rather than means because Boman's indictment references only a crime of violence. See Mathis, 136 S. Ct. at 2257 ("[A]n indictment . . . could indicate, by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements, each one of which goes toward

a separate crime."). Thus, we must determine whether using or carrying a gun during and in relation to a crime of violence is a predicate offense under the ACCA.

The government contends that for ACCA purposes, the modified categorical approach applies to convictions under § 924(c)(1). Using the modified categorical approach, the government argues, a court may review the record materials to determine the specific crime of violence underlying the § 924(c)(1) conviction. The court can then determine whether that specific crime of violence is a violent felony for ACCA purposes. We disagree.

Having determined that Boman's 1992 convictions were for using or carrying a gun during or in relation to a *crime of violence*, we must look to the statutory definition of crime of violence. In 1992, § 924(c)(3) stated:

> For purposes of this subsection the term "crime of violence" means an offense that is a felony and --
>
> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Thus, we must decide whether this definition is divisible to determine whether Boman's convictions qualify as predicate offenses under the ACCA.

We conclude that § 924(c)(3) is not divisible. First, a judge, not a jury, decides whether an underlying offense constitutes a crime of violence under either § 924(c)(3)(A) or § 924(c)(3)(B). Second, the definition of crime of violence as it is used in § 924(c)(1) is contained in a separate statutory section, § 924(c)(3). See McFee, 842 F.3d at 575 ("The fact that the definition of 'crime of violence' is

contained in a separate section of [§ 924(c)] thus provides textual support for the conclusion that the term 'crime of violence' is intended to be an element of the crime and that the [definition of crime of violence in § 924(c)(3)] contains alternative means by which that element may be committed."). Finally, a peek at the record materials does not indicate which subsection of § 924(c)(3) applied to Boman's underlying offense. We therefore apply the categorical approach to determine whether Boman's conviction for using or carrying a gun during and in relation to a crime of violence is a predicate offense.

Under the categorical approach, a § 924(c)(1) conviction is not a predicate offense for ACCA purposes. In Johnson v. United States, the Supreme Court held that the residual clause of the ACCA was unconstitutional. 135 S. Ct. 2551 (2015). This court, however, has upheld the similarly-worded residual clause in § 924(c)(3)(B). United States v. Prickett, 839 F.3d 697, 699–700 (8th Cir. 2016) (per curiam). Because the residual clause in § 924(c)(3)(B) is still valid, a crime that no longer qualifies as a predicate offense under the ACCA as a violent felony may still qualify as a crime of violence under § 924(c). For example, a defendant may be convicted under § 924(c) for use of a firearm in furtherance of a crime of violence where the underlying offense is conspiracy to commit murder for hire under 18 U.S.C. § 1958. United States v. Taylor, 813 F.3d 1139, 1148 (8th Cir. 2016). However, "[t]o convict for conspiracy to commit murder for hire under 18 U.S.C. § 1958, the government must prove that the defendant '(1) travelled or caused another to travel in interstate commerce, (2) with the intent that a murder be committed, (3) for hire.'" Id. (quoting United States v. Delpit, 94 F.3d 1134, 1149 (8th Cir. 1996)). Thus, murder for hire can only constitute a crime of violence under the residual clause of § 924(c)(3)(B), and not under the force clause of § 924(c)(3)(A), because it does not have "as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). See United States v. Herr, No. 16-CR-10038-IT, 2016 WL 6090714, at *4 (D. Mass. Oct. 18, 2016) ("A person may thus violate 18 U.S.C. § 1958 by mere engagement in interstate commerce with the

intent that statute forbids. Because this . . . statute can be violated without proof of 'use,' 'attempted use,' or 'threatened use of physical force,' the murder-for-hire statute does not have as a required 'element the use, attempted use, or threatened use of physical force against the property of another.'"). Accordingly, a conviction under 18 U.S.C. § 1958 would not qualify as a predicate offense under the ACCA's definition of violent felony even though it still qualifies as a crime of violence to support a conviction under § 924(c).

Further, both clauses of the definition of crime of violence in § 924(c)(3) include force against *the property* of another, not just the person of another. Under the ACCA, however, a felony is only a violent felony if it involves the use of force against the person of another, not the property of another. See 18 U.S.C. § 924(e); see also Johnson v. United States, 559 U.S. 133, 140 (2010). And we have previously held that "the phrase 'person or property' lists two alternative means of committing" an offense. McMillan, 863 F.3d at 1058. Thus, § 924(c)'s definition of crime of violence is not divisible and sweeps broader than the definition of violent felony under the ACCA. And because a crime that would not qualify as a violent felony under the ACCA may still qualify as a crime of violence under § 924(c), a conviction for the use of a firearm during and in relation to a crime of violence is not an ACCA predicate offense under the categorical approach. See McFee, 842 F.3d at 575 (stating that where a statute lists crimes that qualify as violent crimes, some of which qualify as ACCA predicate offenses and some of which do not, a conviction under that statute "is not an ACCA predicate offense under the categorical approach"). Accordingly, Boman does not have three predicate offenses and the district court plainly erred in sentencing him as an Armed Career Criminal.

Additionally, the error affects Boman's substantial rights because without the ACCA sentence enhancement, Boman's statutory maximum sentence is ten years' imprisonment. Compare 18 U.S.C. § 924(a)(2), with id. § 924(e)(1). And, pursuant to U.S.S.G. §§ 4B1.4(b)(3)(A) and 4B1.4(c)(2), as an Armed Career Criminal,

Boman's base offense level was 34 and his criminal history category was VI. Without the Armed Career Criminal designation, however, Boman's criminal history category is IV and his base offense level is either 24 or 28, depending on whether the U.S.S.G. § 2K2.1(b)(6)(B) sentence enhancement applies, as discussed below. Thus, without the ACCA sentence enhancement, Boman's advisory Guidelines range is either 77–96 months' imprisonment or 110–120[3] months' imprisonment. Finally, Boman's sentence of 262 months' imprisonment, more than ten years longer than he otherwise would have received, seriously affects the fairness and integrity of judicial proceedings. See United States v. Johnson, 416 F.3d 884, 886 (8th Cir. 2005).

## B. Sentence Enhancement

Boman's PSR recommended a four-level sentence enhancement under U.S.S.G. § 2K2.1(b)(6)(B). At sentencing, the district court overruled Boman's timely objection to the recommended enhancement. Boman appeals, arguing that the record does not support the § 2K2.1(b)(6)(B) enhancement.

Under § 2K2.1(b)(6)(B), the four-level sentence enhancement applies if a defendant "used or possessed any firearm or ammunition in connection with another felony offense." "In applying § 2K2.1(b)(6) when the defendant has not been convicted of another state or federal felony offense, the district court must find by a preponderance of the evidence that another felony offense was committed, and that use or possession of the firearm 'facilitated' that other felony." United States v. Littrell, 557 F.3d 616, 617 (8th Cir. 2009). "When the issue is whether the evidence supports these findings, we review the district court's determination for clear error." United States v. Holm, 745 F.3d 938, 940 (8th Cir. 2014).

---

[3] Normally, for a base level offense of 28 and criminal history category of IV the advisory Guidelines range is 110–137 months' imprisonment. However, because there is a ten-year statutory maximum sentence, the advisory Guidelines range applicable to Boman is 110–120 months' imprisonment.

The Guidelines define "another felony offense" as "any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." U.S.S.G. § 2K2.1 cmt. n.14(C). In this case, the PSR recommended the § 2K2.1 enhancement based on the belief that Boman's actions constituted Intimidation with a Dangerous Weapon, in violation of Iowa Code § 708.6. A person commits Intimidation with a Dangerous Weapon, a class "C" felony, "when a person (1) has the specific intent to injure or provoke fear or anger in another; (2) shoots, throws, launches, or discharges a dangerous weapon; (3) within an assembly of people; and (4) the people are placed in reasonable apprehension of serious injury." State v. Ross, 845 N.W.2d 692, 699 (Iowa 2014); see also Iowa Code § 708.6.

First, Boman argues that the district court erred in finding that he discharged a firearm in the direction of Brown. We conclude the district court did not clearly err in determining by a preponderance of the evidence that Boman discharged a firearm in Brown's direction. See United States v. Phillips, 506 F.3d 685, 688 (8th Cir. 2007) ("When the proposed enhancement is based upon an offense for which there was no prior conviction, . . . 'the government must prove at sentencing (by a preponderance of the evidence) that the defendant committed it.'" (quoting United States v. Raglin, 500 F.3d 675, 677 (8th Cir. 2007)). At trial, Michaels testified that she saw two African American men arguing on opposite sides of the street before one of them crossed the street, hit the other man, reached for his hip, and pointed his hand at the other man who had fallen to the ground. And Cinkan testified that Brown had crossed the street and Boman followed him. Both Cinkan and Michaels then heard a loud noise. Brown testified that he heard a loud noise that sounded like a gunshot, thought he had been shot, and had to check himself for bullet wounds after his confrontation with Boman. Boman argues that there was no evidence that he had a gun out on the street and that it was more likely that the gunshot came from Brown's gun. No evidence was introduced at trial to support this argument and, in fact, an officer at the

scene checked Brown for weapons and did not find any. Additionally, when officers located the firearm and ammunition inside Boman's home, the firearm's magazine was missing a round. Thus, the fact that Boman discharged a firearm in Brown's direction was supported by a preponderance of the evidence.

Second, Boman argues that he did not commit the offense of Intimidation with a Dangerous Weapon because his actions were justified. A defendant may raise justification as a defense under Iowa Code § 704.3, which permits "a defendant to use reasonable force when the defendant reasonably believes that such force is necessary to defend himself or herself from any imminent use of unlawful force." State v. Stallings, 541 N.W.2d 855, 857 (Iowa 1995). "If there is substantial evidence of self-defense, the State has the burden of proving the defendant was not justified in his use of force in his defense." Id. Here, there was not substantial evidence of self-defense, and the district court did not clearly err in finding that Boman's discharge of the firearm was not justified. No evidence was presented at trial to support a finding that Boman was acting in self-defense or in the defense of others. And there was no evidence that Brown was armed. At sentencing, Cooper testified that Brown had assaulted her daughter before Boman discharged the firearm. Cooper, however, was not present during the incident, and the district court did not clearly err in finding that Cooper's testimony was hearsay and conflicted with disinterested witness testimony.

As a result, the district court did not clearly err in finding that Boman committed the Iowa felony offense of Intimidation with a Dangerous Weapon and that Boman's actions were not justified. Accordingly, the district court did not clearly err in finding that Boman possessed the firearm in connection with a felony offense and the § 2K2.1(b)(6)(B) sentence enhancement was appropriate.

-13-

## III.

Based on the foregoing discussion, we conclude that Boman is not an Armed Career Criminal. We further conclude that a four-level sentence enhancement is appropriate. Accordingly, Boman's base offense level should have been 28 and his criminal history category should have been IV. We thus reverse and remand for resentencing in accordance with this opinion.