[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-12943

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

CHRISTOPHER JAWAN WEAVER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 2:21-cr-00279-MHH-NAD-1

_____

Before ROSENBAUM, JILL PRYOR, and BRANCH, Circuit Judges.

PER CURIAM:

Christopher Weaver appeals his 57-month sentence imposed after he pleaded guilty to possessing a firearm as a convicted felon. He argues that the district court clearly erred in imposing a four-level guidelines enhancement under U.S.S.G. § 2K2.1(b)(6)(B) for possession of the firearm in connection with another felony offense. After review, we affirm.

## I.    Background

On April 6, 2021, an altercation ensued between Weaver, then age 38, and B.J., the 16-year-old daughter of Weaver's girlfriend Williams, during which he pistol-whipped the minor in the face.[1] A grand jury indicted Weaver for possession of a firearm by a convicted felon, and he pleaded guilty without the benefit of a plea agreement.

Prior to sentencing, the United States Probation Office prepared a presentence investigation report ("PSI"), which included a four-level enhancement under § 2K2.1(b)(6)(B), for possession of a firearm in connection with another felony offense. The other felony offense was Alabama second-degree assault[2]

---

[1] The gun belonged to Weaver's girlfriend, Williams. Weaver admitted during the change-of-plea hearing that he knew he had a prior felony conviction and was not supposed to possess a firearm.

[2] Initially, the PSI indicated that Weaver possessed the firearm in connection with the felony offense of first-degree domestic violence. However, at the

based on the underlying altercation.  Weaver's resulting guidelines range was 57 to 71 months' imprisonment.  Weaver objected to the § 2K2.1(b)(6)(B) enhancement, arguing in relevant part that his conduct did not establish the offense because he had not intended to harm B.J. and was just trying "to get her off of him and remove himself from the situation."

At sentencing, the government called several witnesses to establish the assault.[3]  Deputy Travis Burks testified that he and Officer Christopher Davis responded to a domestic violence call just after midnight on April 6, 2021.  Upon arrival, Davis went inside the home, while Burks began walking around the exterior.  When Burks went inside, he found B.J. and Weaver in a back room of the home.  Officer Burks observed that B.J.'s "face was covered in blood" from a gash over her left eye, and she "had blood on her face and on her shirt."  Officer Burks stated that Weaver was lying on the floor in the back room, and "[t]here was a large amount of blood on the floor and on the wall" of the room.  There was a small handgun with blood on it on a shelf in the back room near Weaver.  Officers had to place B.J. and Weaver in separate areas of the home because they continued to argue with each other, and B.J., who officers described as "upset" and "hyped up," attempted repeatedly

---

sentencing hearing, the government explained that it planned to prove instead that Weaver possessed the firearm in connection with the felony offense of second-degree assault under Alabama law, and the court modified the PSI accordingly.

[3] Testimony unrelated to the issue on appeal is omitted from this opinion.

to make movements toward Weaver until officers removed Weaver from the house. Weaver admitted that he hit the victim in the face, but also stated she had been "jumping on him." Weaver told officers that he did not have any injuries.

Officer Davis testified that, upon entering the home, he observed B.J. and Weaver "in a struggle," and B.J. had Weaver in a headlock. Davis instructed them "to turn loose" and for Weaver to get on the ground, and they complied.

The officer who interviewed Weaver testified that Weaver stated that B.J.'s mother had been having issues with B.J.'s behavior and her "backtalking" and "not listening."[4] And on the day in question, B.J. had brought another girl home, who was 12 or 13 years old, and the girl's parents had called the police and reported her as a runaway.[5] Weaver and B.J.'s mother told B.J that the girl had to go home. They drove B.J. and the girl toward the girl's home, but upon seeing the police, they let B.J. and her friend out of the car down the block, and Weaver and B.J.'s mom returned to B.J.'s mother's residence. However, B.J. and the girl showed back up at B.J.'s home in a car of a man that he did not recognize. Because the car and the man was unfamiliar, Weaver grabbed his girlfriend's pistol and went outside.[6] When he came back inside, he

---

[4] The government played an audio recording of Weaver's interview.

[5] Weaver told the officer that there was a warrant out for his arrest due to a probation violation, so he was trying to avoid any interactions with the police. Therefore, the situation with B.J.'s friend "made him uncomfortable."

[6] The gun was not loaded.

and B.J. started to argue over the situation, and B.J. grabbed him.[7] He then "pushed her against the wall" and "she came back into his face" and swung at him, at which point he hit her in the face to keep her off of him. He forgot that the gun was in his hand. He stated he was going to defend himself, and he did not care if she was 16.

B.J., who was 16 at the time of the incident, testified that, on the day in question, she had brought her friend home to braid her hair, but her friend did not have her family's permission to go to B.J.'s house. Upon learning that her friend's family had called the police and was concerned about her friend's whereabouts, Weaver and her mother drove B.J. and her friend back to her friend's grandmother's house. The police were at her friend's house, and Weaver did not want to be seen by the police. So B.J. and her friend got out of the car, and Weaver and her mother drove back home. Instead of walking her friend home, however, B.J. and her friend caught a ride with a stranger passing by back to B.J.'s house.

B.J. and her friend were in B.J.'s room braiding hair when they heard an argument between Weaver and B.J.'s mother. When they heard someone say something about a gun, B.J. and her younger sister decided to call the police. According to B.J., Weaver got upset that she had called the police, held a gun up to her face, and pistol whipped her by hitting her in the face twice with the gun.

---

[7] In the audio recording of the interview, Weaver stated that B.J. called the police before they started arguing when Weaver was outside confronting the driver.

After he hit her, they began physically fighting, and they were fighting when the police arrived. B.J. believed that Weaver was intoxicated or on drugs the night of the incident because "his eyes were red and he couldn't keep his eyes still."

Weaver then called B.J.'s mother as a witness. She testified that B.J. has schizophrenia and anger issues, and that she is often non-compliant with her medications. However, she did not know whether or not B.J. was taking her medication at the time of the incident. She stated that her daughter has threatened her before, but did not elaborate as to the nature of the threats.

B.J.'s mother explained that, on the day of the incident, she did not know that B.J.'s friend was "hiding" in the house, and the girl's family had repeatedly called looking for her. They drove the girl home, but dropped B.J. and the girl off about "half a block" from the house because the police were at the house. She and Weaver headed home, but later B.J. and her friend showed back up at B.J.'s home, and B.J. seemed "mad, [and] angry." A middle-aged man drove the girls back to B.J.'s house. After dropping the girls off, he just sat in the driveway and did not leave. B.J.'s mother and Weaver went outside to confront the man and tell him to leave. At some point, B.J.'s mother went inside and retrieved her gun. B.J.'s mother described the evening as "chaos on top of chaos."

After the man in the driveway left, B.J.'s mother and Weaver went inside and got in an argument over B.J.'s behavior. At some point, B.J. and Weaver started arguing about his dispute with her mother. B.J.'s mother did not see Weaver strike B.J. B.J.'s mother

confirmed that she kept in touch with Weaver following his arrest in this case. B.J.'s mother explained that she still cared about Weaver, but that she would not lie to keep him out of trouble and that she testified truthfully.

On cross-examination, B.J.'s mother admitted that in recorded jail calls she told Weaver that the incident had "probably come from drugs" and that "he had a lot of problems going on in his life from drugs."

Following the witnesses' testimony, the district court continued the sentencing hearing and allowed the parties to file supplemental briefing on the § 2K2.1(b)(6)(B) sentencing enhancement.

In his supplemental brief, Weaver argued, in relevant part, that the enhancement did not apply because Weaver "acted in self-defense to repel B.J.'s physical attacks, and he was justified in using force under the circumstances." The government in turn argued that Weaver had not acted in self-defense.

When the sentencing hearing resumed, the district court stated that it did not find B.J.'s testimony credible, and it did not accept the testimony that Weaver was the aggressor. Nevertheless, the district court overruled Weaver's objection to the four-level § 2K2.1(b)(6)(B) sentencing enhancement, concluding that Weaver used more force than was reasonably necessary to defend himself, such that his self-defense argument failed under Alabama law. Thus, the court adopted the PSI and

imposed a bottom of the guidelines sentence of 57 months' imprisonment to be followed by 2 years' supervised release.

Following the sentencing hearing, the district court issued written findings of fact and conclusions of law concerning the sentencing enhancement. Specifically, the district court found both that B.J.'s version of events and Weaver's statement that he forgot that the gun was in his hand when he struck B.J. were not credible.[8] Rather, the court found B.J.'s mother's testimony credible. The court found that B.J. was "responsible for the events that led to her fight with Mr. Weaver," citing the fact that she brought a young girl home with her without the girl's family's permission and compounded the situation by not taking the girl home once Weaver and B.J.'s mother dropped them off near the girl's house and instead returned home with the girl after obtaining a ride from a stranger. The court further found that B.J. "instigated her fight with Mr. Weaver" and that Weaver "intended to strike the victim to defend himself from her aggression." However, the court found that Weaver "used more force than he could reasonably believe was necessary when he picked up the unloaded gun and struck the victim with it." The court noted that there was no evidence that 16-year-old B.J. was capable of causing serious bodily harm to Weaver, which meant that he could not "reasonably believe that he had to strike [her] in the face with a gun

---

[8] The district court also found that, although there was evidence that Weaver had issues with drugs, there was no credible evidence that Weaver was intoxicated at the time of the incident.

to defend himself from such harm." Therefore, the court concluded that the government established that Weaver committed second-degree assault under Alabama law and that he would not be able to establish self-defense "because he used more force [than] he could reasonably believe necessary to defend himself against the assault the victim initiated."

Weaver timely appealed.

## II.    Discussion

Weaver argues that the district court clearly erred in imposing the four-level § 2K2.1(b)(6)(B) enhancement for possession of the firearm in connection with another felony offense where the evidence showed that Weaver acted in self-defense, and self-defense is a complete defense to the offense of assault under Alabama law.[9] He maintains that the district court erred in concluding that he used more force than was reasonably necessary to defend himself because the amount of force he used did not stop the attack, as evidenced by the fact that B.J. had Weaver in a headlock when police arrived.

"[W]e review a district court's determinations of law de novo and its findings of fact for clear error. A district court's determination that a defendant possessed a gun "'in connection with' another felony offense is a finding of fact that we review for

---

[9] Weaver does not dispute that, absent his claim of self-defense, the evidence established by a preponderance that felony offense of second-degree assault under Alabama law.

clear error." *United States v. Bishop*, 940 F.3d 1242, 1250 (11th Cir. 2019) (quotations omitted). "For a factual finding to be clearly erroneous, this court, after reviewing all of the evidence, must be left with a definite and firm conviction that a mistake has been committed." *United States v. Rodriguez-Lopez*, 363 F.3d 1134, 1137 (11th Cir. 2004) (quotations omitted).

For a factual finding to be clearly erroneous, we must be left with the definite and firm conviction that the district court made a mistake. *United States v. Smith*, 821 F.3d 1293, 1302 (11th Cir. 2016). Additionally, "[a] factual finding cannot be clearly erroneous when the factfinder [chooses] between two permissible views of evidence." *United States v. Wilson*, 788 F.3d 1298, 1317 (11th Cir. 2015).

The guidelines provide for a four-level enhancement if the defendant "used or possessed any firearm . . . in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B). "[A]nother felony offense" includes state offenses punishable by imprisonment for a term of more than one year, regardless of whether the defendant was charged with that offense. *United States v. Smith*, 480 F.3d 1277, 1280 (11th Cir. 2007). The government bears the burden of establishing by a preponderance of the evidence the facts necessary to support the sentencing enhancement. *Id.*

Under Alabama law, a person commits second-degree assault and can be punished by a term of imprisonment greater than one year if he causes physical injury to any person by means of a deadly weapon or a dangerous instrument with the intent to

cause physical injury. Ala. Code § 13A-6-21(a)(2), (b) (providing that second-degree assault is a Class C felony); *id.* § 13A-5-6(a)(3) (explaining that Class C felonies in Alabama by "not more than 10 years or less than one year and one day"). However, Alabama law also provides that "[a] person is justified in using physical force upon another person in order to defend himself or herself . . . from what he or she reasonably believes to be the use or imminent use of unlawful physical force by that other person, and he or she may use a degree of force which he or she reasonably believes to be necessary for the purpose."[10] *Id.* § 13A-3-23(a).

Here, the district court did not clearly err by finding that Weaver used more force than he could have reasonably believed was necessary to defend himself against B.J.'s attack. Based on the permissible views of the evidence of the altercation between B.J. and Weaver, notwithstanding the fact that Weaver's use of force did not stop B.J.,[11] the district court did not clearly err in finding

---

[10] We have not addressed whether an affirmative defense to the underlying felony that forms the basis of the § 2K2.1(b)(6)(B) enhancement would necessarily negate the sentencing enhancement. However, as Weaver points out, at least two other circuits have suggested that an affirmative defense to the underlying felony offense proven by a preponderance of the evidence would negate the sentencing enhancement. *See, e.g.*, *United States v. Mattox*, 27 F.4th 668, 676–77 (8th Cir. 2022); *United States v. Price*, 16 F.4th 1263, 1266 (7th Cir. 2021). Furthermore, the government agrees that, if Weaver acted in self-defense, then the enhancement would not apply. Therefore, for purposes of this opinion, we assume without deciding that, if Weaver acted in self-defense, the sentencing enhancement would be inapplicable.

[11] Weaver makes much of the fact that Weaver's use of force did not stop B.J.'s attack as evidenced by the fact that B.J. had Weaver in a headlock when the

that it was an unreasonable use of force for Weaver, an adult male in his thirties, to pistol-whip a 16-year-old unarmed girl in order to defend himself from her physical altercation.[12]  This finding is

---

police arrived.  But self-defense is not measured based on conduct that occurred after the use of force.  Thus, whether or not the use of force stopped the attack is irrelevant to whether the use of force was reasonable.  Rather, in Alabama "[a] person is justified in using physical force upon another person in order to defend himself or herself . . . from what he or she reasonably believes to be the use or imminent use of unlawful physical force by that other person, and he or she may use a degree of force which he or she reasonably believes to be necessary for the purpose."  Ala. Code § 13A-3-23(a).  Thus, the inquiry focuses on whether the use of force was reasonable in light of the circumstances that preceded the use of force (*i.e.*, B.J.'s conduct before Weaver struck her in the face with the gun) not the circumstances that followed the use of force.

[12] To the extent that Weaver argues for the first time on appeal that the district court added a requirement not listed in Alabama's self-defense statute—that Weaver had to reasonably believe that B.J. was capable of causing him serious bodily harm for his actions to be justified—Weaver failed to raise that objection in the district court, and, therefore, we review for plain error.  *See e.g.*, *United States v. Massey*, 443 F.3d 814, 818 (11th Cir. 2006) ("When the appealing party does not clearly state the grounds for an objection in the district court, we are limited to reviewing for plain error."); *see also Wilson*, 788 F.3d at 1318 (applying plain error review for sentencing argument raised for first time on appeal).  The district court committed no error, plain or otherwise.  Contrary to Weaver's argument, a review of the district court's findings of fact and conclusions of law confirms that the district court did not add a requirement to Alabama's self-defense statute that Weaver had to believe that B.J. was capable of causing him serious bodily harm in order for his actions to be justified.

further supported by the fact that Weaver did not suffer any injuries from the attack while B.J. was seriously injured.  Thus, the district court did not err in rejecting Weaver's self-defense argument and applying the four-level sentencing enhancement. *See Wilson*, 788 F.3d at 1317 ("A factual finding cannot be clearly erroneous when the factfinder [chooses] between two permissible views of evidence.").  Accordingly, we affirm the district court.

**AFFIRMED.**