# United States Court of Appeals

### For the Eighth Circuit

_____

No. 17-2341

_____

United States of America

*Plaintiff - Appellee*

v.

Brandon A. House

*Defendant - Appellant*

_____

No. 17-2850

_____

United States of America

*Plaintiff - Appellee*

v.

Anthony J. Van Pelt

*Defendant - Appellant*

_____

Appeals from United States District Court
for the Western District of Missouri - Springfield

_____

Submitted: November 15, 2018
Filed: May 7, 2019

_____

Before GRUENDER, KELLY, and GRASZ, Circuit Judges.

_____

KELLY, Circuit Judge.

Brandon A. House and Anthony J. Van Pelt were each indicted on numerous counts concerning their participation in a large-scale methamphetamine distribution scheme in Springfield and Kansas City, Missouri. House pleaded guilty to conspiracy to distribute 500 grams or more of methamphetamine and possession with intent to distribute methamphetamine. The district court[1] sentenced House to 240 months of imprisonment. Van Pelt pleaded guilty to conspiracy to distribute 500 grams or more of methamphetamine, distribution of 50 grams or more of methamphetamine, distribution of methamphetamine, and possession with intent to distribute 500 grams or more of methamphetamine. He was sentenced to 252 months of imprisonment and 10 years of supervised release. House and Van Pelt both appeal.

I

House and Van Pelt both challenge the 21 U.S.C. § 851 enhancement of their sentences. On August 6, 2015, the government filed an information in each of their cases under § 851, identifying prior convictions that would increase their mandatory minimum sentences. For the first time on appeal, they each argue that the district

_____

[1]The Honorable M. Douglas Harpool, United States District Judge for the Western District of Missouri.

court committed plain error by failing to follow the procedures to establish prior convictions as required by 21 U.S.C. § 851.[2]

Because neither House nor Van Pelt objected, we review for plain error, affirming their sentences unless they can show (1) an error; (2) that is plain; (3) that affects their substantial rights; and (4) that "seriously affects the fairness, integrity or public reputation of judicial proceedings." United States v. Boman, 873 F.3d 1035, 1040 (8th Cir. 2017) (cleaned up). "To satisfy [the] third condition, the defendant ordinarily must show a reasonable probability that, but for the error, the outcome of the proceeding would have been different." Rosales-Mireles v. United States, 138 S. Ct. 1897, 1904–05 (2018) (cleaned up).

Section 21 U.S.C. § 851(b) provides:

> If the United States attorney files an information under this section, the court shall after conviction but before pronouncement of sentence inquire of the person with respect to whom the information was filed whether he affirms or denies that he has been previously convicted as alleged in the information, and shall inform him that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence.

The government concedes that the district court failed to conduct this inquiry before imposing House's sentence, but it argues that House cannot show that this error affects his substantial rights. We agree. House has not shown that there is a reasonable probability that his sentence would be different if the district court had

---

[2]In their counseled briefs, House and Van Pelt do not contest that they are ineligible for relief under Section 401 of the First Step Act of 2018 at this stage of the proceedings. "We generally do not accept pro se motions or briefs when an appellant is represented by counsel," and decline to depart from that general rule here. United States v. McIntosh, 492 F.3d 956, 961 n.2 (8th Cir. 2007).

engaged in the § 851(b) colloquy. He does not argue that his prior conviction was invalid, nor does he assert how his rights were otherwise affected. The district court did not commit plain error by failing inquire into House's prior conviction pursuant to 21 U.S.C. § 851(b). See United States v. Rounsavall, 115 F.3d 561, 566 (8th Cir. 1997) (failure to engage in 851(b) colloquy is subject to harmless error analysis).

Van Pelt similarly cannot show that a failure to conduct the § 851 inquiry affected his substantial rights. We understand Van Pelt to argue that the conviction identified in the § 851 information — a 2004 Missouri conviction for Felony Possession of a Controlled Substance — does not qualify as a predicate "felony drug offense" under § 841(b)(1) because the conduct underlying his predicate conviction — possession of methamphetamine — "would only be a misdemeanor offense" if he had been charged in federal court. But a "felony drug offense" is "an offense that is punishable by imprisonment for more than one year under any law of the United States or *of a State* . . . that prohibits or restricts conduct relating to . . . depressant or stimulant substances." 21 U.S.C. § 802(44) (emphasis added). Van Pelt concedes that he was convicted of felony possession in Missouri and that he received a sentence of 42 months. Therefore, his prior conviction qualified as a felony drug offense, and we find no plain error.

II

House next argues that the district court failed to properly conduct the plea colloquy under Rule 11 of the Federal Rules of Criminal Procedure. At the plea hearing, the district court and the government discussed the statutory minimums and maximums that House would face by pleading guilty and explained the applicable Guidelines range. The district court gave House the opportunity to correct any inaccuracies in the government's recitation of facts, and House confirmed that there were none. Before asking House whether he wished to plead guilty, the district court

asked counsel for both parties if they wanted "any further record" to satisfy Rule 11, and they each declined. House then pleaded guilty.

Rule 11(b)(1) requires a district court to "address the defendant personally in open court" and inform the defendant of certain enumerated rights and facts before accepting a guilty plea. "[A] defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11, must show a reasonable probability that, but for the error, he would not have entered the plea." United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004).

Although the government argues that the district court substantially complied with Rule 11, it concedes that the district court made certain Rule 11 errors. For example, it failed to inform House of "the government's right, in a prosecution for perjury or false statement, to use against [him] any statement that [he] gives under oath." Fed. R. Crim. P. 11(b)(1)(A). But House makes no attempt to argue that a failure to comply with Rule 11(b)(1)(A) influenced his decision to plead guilty. Rather, House makes the conclusory contention that there is a reasonable probability he would not have pleaded guilty if (1) the district court — rather than the government — had advised him of the nature of each charge, (2) the district court had explained the maximum term of supervised release possible, and (3) the district court had advised him of the maximum punishment for revocation of supervised release.

House has failed to show that any of these three purported Rule 11 errors affected his decision to plead guilty and thus cannot satisfy the third prong of the plain error standard. First, the district court confirmed that House had read and understood the charges against him and that there was nothing inaccurate in the government's description of the charges and the evidence. House does not say how the explanation he received was insufficient such that it "could have had an effect on [his] assessment of his strategic position." Dominguez Benitez, 542 U.S. at 85. Second, the district court explained to House that he faced a possibility of a lifetime

-5-

of supervised release on one count. House provides no explanation as to why a description of the maximum term of supervised release on the *other* count would have had any effect on his decision to plead guilty. Finally, Rule 11 no longer requires a district court to advise a defendant of the effect of any violation of his conditions of supervised release, and therefore House's final argument is also meritless. See United States v. Todd, 521 F.3d 891, 895–96 n.2 (8th Cir. 2008).

III

Van Pelt also challenges the district court's calculation of his Guidelines range. Van Pelt objected to the Presentence Investigation Report (PSR)'s recommendation of a base offense level of 38 pursuant to USSG § 2D1.1(c)(1), which corresponded to 45 kilograms or more of methamphetamine, and a 2-level enhancement for Van Pelt's leadership role in the offense under USSG § 3B1.1(c). The district court overruled the objection to the leadership enhancement. As to quantity, it sustained the objection in part, concluding, "I think there's clearly 15 [kilograms]," but also that it could "see the argument that it may not get all the way to 45," and so it assigned a base offense level of 36, which corresponded to at least 15 but less than 45 kilograms of methamphetamine. See USSG § 2D1.1(c)(2) (base offense level 36 for at least 15 but less than 45 kilograms of methamphetamine). This resulted in a total offense level of 35, a criminal history category IV, and an advisory Guidelines range of 235 to 293 months. The district court imposed a sentence of 252 months of imprisonment on all counts, to be served concurrently.

Van Pelt appeals the drug quantity calculation and the leadership-role enhancement. When reviewing the district court's calculation of the Guidelines range, we review the district court's factual findings for clear error and its application of the Guidelines de novo. United States v. Blankenship, 552 F.3d 703, 704 (8th Cir. 2009).

A

Van Pelt argues that the district court held him responsible for drug quantities that predated his membership in the conspiracy. "When calculating drug quantity in the context of a narcotics trafficking conspiracy, the sentencing court may consider all transactions known or reasonably foreseeable to the defendant that were made in furtherance of the conspiracy." United States v. Plancarte-Vazquez, 450 F.3d 848, 852 (8th Cir. 2006); see also United States v. Gallardo-Marquez, 253 F.3d 1121, 1124 (8th Cir. 2001) ("The District Court must determine the amount of drugs for which a criminal defendant is responsible by a preponderance of the evidence."). "We will reverse a determination of drug quantity only if the entire record definitely and firmly convinces us that a mistake has been made." United States v. Newton, 31 F.3d 611, 614 (8th Cir. 1994).

We find no clear error in the district court's quantity determination. The parties agree that Van Pelt's involvement in the conspiracy was limited to August to November 2014.[3] Based on the facts stipulated to by the parties and the unobjected-to portions of the PSR, there is sufficient evidence to support a finding that Van Pelt was responsible for at least 15 kilograms of methamphetamine during this limited time period. The district court based its finding on the methamphetamine that was seized and cash that was converted to a drug equivalent based on a purchase price of $14,000 per pound of methamphetamine. See USSG § 2D1.1 cmt. n.5 ("Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the

---

[3]The government conceded that the conduct of members of the conspiracy prior to Van Pelt joining the conspiracy should be disregarded. See USSG § 1B1.3 cmt. n.3(B) ("[T]he accountability of the defendant for the acts of others is limited by the scope of his or her agreement to jointly undertake the particular criminal activity.").

court shall approximate the quantity of the controlled substance [and] may consider . . . the price generally obtained for the controlled substance, financial or other records, similar transactions in controlled substances by the defendant, and the size or capability of any laboratory involved."); accord United States v. Sicaros-Quintero, 557 F.3d 579, 582 (8th Cir. 2009). Van Pelt also conceded that two co-defendants were his "associates" who helped him obtain drugs from Kansas City for another supplier. These quantities, too, were included. In total, these amounts added up to more than 15 kilograms of methamphetamine or methamphetamine equivalent. The district court did not err in calculating the total drug quantity reasonably attributable to Van Pelt. See United States v. Roach, 164 F.3d 403, 413–14 (8th Cir. 1998) ("The court may make a specific numeric determination of quantity based on imprecise evidence so long as the record reflects a basis for the court's decision." (citation omitted)).

B

Van Pelt also argues that the district court erred by applying a two-level leadership enhancement even though he had no "affirmative intent" to engage in a leadership role within the broader conspiracy. In relevant part, USSG § 3B1.1(c) provides that "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity . . . increase by 2 levels." To qualify for the enhancement, the defendant must "direct or enlist the aid of others." United States v. Bahena, 223 F.3d 797, 805 (8th Cir. 2000). A defendant may be subject to the § 3B1.1(c) enhancement even where he manages or supervises only one other participant in the conspiracy or if the management activity was limited to a single transaction. See United States v. Irlmeier, 750 F.3d 759, 764 (8th Cir. 2014).

We find no clear error in the district court's finding that Van Pelt held a leadership role for purposes of the § 3B1.1(c) enhancement. Van Pelt stipulated that he directed one of his associates to distribute methamphetamine to another

co-conspirator on November 15, 2014. And, although he objected to the enhancement because the PSR did not put forward facts indicating that Van Pelt recruited others, planned the offense, or controlled others' actions, Van Pelt did not object to the PSR's factual findings that his two associates would, among other things, deliver and pick up packages of methamphetamine at his direction. See United States v. Humphrey, 753 F.3d 813, 818 (8th Cir. 2014) (noting that an objection to PSR's recommendation but not the underlying facts does not prevent district court from relying on PSR's factual findings). Under our precedent, these facts are sufficient to support the enhancement. See, e.g., United States v. Alcalde, 818 F.3d 791, 794 (8th Cir. 2016) (applying § 3B1.1 enhancement where defendant directed actions of two co-conspirators); United States v. Gutierrez, 757 F.3d 785, 790 (8th Cir. 2014) (applying § 3B1.1 enhancement where defendant directed actions of one co-conspirator).

## IV

For the reasons stated above, we affirm the judgments of the district court.

_____