# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 24-2111

———————————————

United States of America

*Plaintiff - Appellee*

v.

Veronica Del Carmen Pineda De Aquino

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the Western District of Arkansas

——————————

Submitted: January 16, 2025
Filed: July 7, 2025

——————————

Before GRASZ, STRAS, and KOBES, Circuit Judges.

——————————

GRASZ, Circuit Judge.

Veronica Pineda De Aquino pled guilty to passport fraud, and the district court[1] sentenced her to 32 months of imprisonment. Pineda argues on appeal the district court erred when sentencing her, first by not expressly accepting or rejecting

———————————

[1]The Honorable Timothy L. Brooks, United States District Judge for the Western District of Arkansas.

the plea agreement, and second by imposing a substantively unreasonable sentence. We affirm.

## I. Background

In October 2018, Pineda used a false identity to apply for a United States passport. In support of her application, Pineda submitted an Arkansas driver's license, a birth certificate, and a social security number — all purporting to be A.E.,[2] a citizen of the United States who was born in Puerto Rico. Due to suspicions of fraudulent identity, officials did not issue the passport and referred Pineda's application for investigation. With cooperation from the real A.E., investigators concluded Pineda had assumed her identity. Investigators determined Pineda was a citizen of Mexico, whose first recorded entry into the United States was in 1999.

In February 2023, investigators contacted Pineda over the phone and then went to her home. After investigators showed Pineda her passport application, she confirmed she had submitted and signed it and asked why the process was taking so long. The investigators replied that the COVID-19 pandemic had slowed the process and then ended the conversation.

Later in June 2023, a grand jury indicted Pineda for willfully and knowingly making a false statement in an application for a passport in violation of 18 U.S.C. § 1542 (Count One), and knowingly transferring, possessing, and using, without lawful authority, another person's social security number, during and in relation to one or more felony offenses in violation of 18 U.S.C. § 1028A (Count Two). Investigators soon arrested Pineda at her place of employment and transferred her to a detention center, where Pineda continued to identify herself as A.E.

After initially pleading not guilty to both charges, Pineda entered into an agreement with the government under which she would plead guilty to Count One

---

[2]The full name of A.E. is not used so as to protect her identity.

and the government would move to dismiss Count Two. The plea agreement specified the government's promise to move to dismiss Count Two was "made pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure," and "[a]s a result, if the Court should reject the government's motion to dismiss Count Two of the Indictment, [Pineda] shall be afforded the right to withdraw her plea pursuant to Rule 11(c)(5)(B)." Pineda acknowledged she had discussed with the government a possible advisory guideline range under the United States Sentencing Guidelines Manual (Guidelines). She further acknowledged she had not been promised a specific sentence, the actual Guidelines range could be higher than contemplated, and a higher-than-expected range would not give Pineda the right to withdraw her guilty plea. Pineda also recognized the district court was not bound to impose a sentence within the Guidelines range and could impose a sentence up to the statutory maximum of ten years of imprisonment.

At the change of plea hearing, Pineda admitted to knowingly and willfully making false statements with the intent to secure a passport for her own use and thus pled guilty to violating 18 U.S.C. § 1542. The district court accepted Pineda's guilty plea as knowing and voluntary but, consistent with the terms of the plea agreement and Rule 11(c)(3)(A), deferred approving the plea agreement itself until it could review the presentence investigation report (PSR).

The United States Probation Office completed the PSR that detailed Pineda's difficult childhood, explaining she was born in El Salvador, moved to Mexico when she was four, and lived in Mexico until she entered the United States as an adult. She grew up in abject poverty and, at fourteen years old, married a man roughly twice her age. According to the PSR, she permanently relocated to the United States in 2005 to work and provide for herself. Pineda quickly assumed the identity of A.E., a United States citizen living in Puerto Rico, and used that alter ego to obtain and renew (seven times) an Arkansas driver's license, secure employment, register to vote, vote, obtain a mortgage on real property, incur debt that resulted in judgments, obtain financing for two vehicles, and declare bankruptcy. The PSR calculated a total offense level of 4 and a criminal history category of I, resulting in

an advisory Guidelines range of 0 to 6 months of imprisonment. Neither party objected to the PSR.

At the sentencing hearing, the district court began by explaining the procedural history of the case and noting it had deferred the decision on whether to approve or reject the plea agreement until reviewing the PSR. The district court confirmed to both parties it had since received and reviewed the PSR. After confirming neither party objected to the PSR, the district court adopted and approved it without change. Then, without expressly accepting or rejecting the plea agreement, the district court explained to Pineda the next steps it would take in determining the proper sentence. The district court explained the Guidelines range was 0 to 6 months but warned it had the authority to vary upward. The district court invited argument from the parties as to the appropriate sentence. Both Pineda and the government sought a non-custodial sentence.

Contrary to the parties' recommendations, the district court varied upward above the top of the Guidelines range by 26 months. The district court explained a sentence within the Guidelines might have been appropriate if Pineda's case was "a matter of simply being here illegally" or unsuccessfully "attempt[ing] to get a passport." But here, the district court explained, Pineda "attempted to get a passport under an assumed identity and [she] presented fraudulent documents" that she also "used . . . to commit many other crimes"—such as voter fraud, bankruptcy fraud, and mortgage fraud—"that greatly offset all of the mitigating circumstances here." The district court walked through the various sentencing factors set forth in 18 U.S.C. § 3553(a), emphasizing a sentence above the Guidelines was needed to reflect the seriousness of Pineda's offense conduct—particularly because of the repeated fraud's impact on A.E.—and to afford adequate deterrence against similar criminal conduct by Pineda and others. Thus, despite acknowledging that "Pineda in her heart did what she did to make a better life for her children" and "appear[ed] . . . to be a nice person," the district court sentenced her on Count One to 32 months of imprisonment followed by three years of supervised release. The district court dismissed Count Two.

## II. Analysis

On appeal, Pineda raises two issues. First, she argues the district court violated Rule 11 by neglecting to approve or reject the plea agreement before imposing her sentence. Second, she argues the district court abused its discretion by varying upward above the advisory Guideline range and imposing a substantively unreasonable sentence. Rejecting both arguments, we affirm the district court.

### A.

Pineda first argues the district court committed procedural error by failing to expressly approve or reject the plea agreement at sentencing, which she argues was required by Rule 11. She urges us to remand for resentencing so the district court "may fulfill its obligation to either accept or reject the plea agreement as required by rule." We disagree with her proposed remedy, if not also her suggestion of error.

For plea agreements like Pineda's, which require the government to dismiss other charges, the district "court may accept the agreement, reject it, or defer a decision until the court has reviewed the presentence report." Fed. R. Crim. P. 11(c)(3)(A) (referencing Rule 11(c)(1)(A), which contemplates plea agreements where the defendant pleads guilty to a charged offense and "an attorney for the government will . . . move to dismiss[] other charges"). "Implicit in the rule," Pineda argues, "is the notion that, when a court defers a decision on a plea agreement in this manner, it will either accept or reject the agreement after it has reviewed the PSR." Her argument makes sense, particularly considering other provisions in Rule 11. Rule 11(c)(4) provides that when the district court accepts a plea agreement, it "must inform the defendant that to the extent the plea agreement is of the type specified in Rule(c)(1)(A) . . . the agreed disposition will be included in the judgment." Fed. R. Crim. P. 11(c)(4). And if the district court rejects such a plea agreement, it must, pursuant to Rule 11(c)(5), "inform the parties in open court and give the defendant an opportunity to withdraw the guilty plea." *United States v. Brown*, 571 F.3d 690, 693 (7th Cir. 2009) (citing Rule 11(c)(5)). It follows that the district court must

accept or reject the plea agreement before imposing its sentence and entering final judgment.

The district court did not expressly accept or reject the plea agreement here before imposing its sentence. But, as Pineda acknowledges, she did not object to this omission during the sentencing hearing, and thus we review for plain error. *See United States v. House*, 923 F.3d 512, 514 (8th Cir. 2019). Under the plain error standard we will affirm unless Pineda "can show: (1) an error; (2) that is plain; (3) that affects [her] substantial rights; and (4) that 'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *Id.* at 515 (quoting *United States v. Boman*, 873 F.3d 1035, 1040 (8th Cir. 2017)).

Pineda cannot meet the plain error standard. First, it is questionable whether the district court erred, but if it did, the error was not plain. "[I]n order to warrant reversal on plain-error review, 'the legal error must be clear or obvious, rather than subject to reasonable dispute.'" *United States v. Wells*, 63 F.4th 1180, 1185 (8th Cir. 2023) (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)). Pineda points to no analogous case from our circuit where we have required the district court to *expressly* accept the plea agreement before imposing its sentence. And other circuits reaching the issue "have . . . recognized that a district court 'constructively' accepts a plea agreement where the record clearly demonstrates that the court acknowledged the existence of the agreement and operated within its terms." *United States v. Soloff*, 993 F.3d 240, 244 (4th Cir. 2021) (citing *United States v. Leyva-Matos*, 618 F.3d 1213, 1216 n.1 (10th Cir. 2010); *Brown*, 571 F.3d at 694; *United States v. Morales-Sosa*, 191 F.3d 586, 587–88 (5th Cir. 1999)).

Our review of the record here convinces us the district court constructively accepted the plea agreement. At the change of plea hearing, the district court stated it would examine the PSR before accepting the plea agreement. Then, at the beginning of the sentencing hearing, the district court acknowledged it had deferred accepting the plea agreement until after reviewing the PSR. After accepting the PSR without objection, the district court explained the next steps related to sentencing,

invited arguments from the parties, and imposed with explanation Pineda's sentence. Finally, the district court implemented the terms of the plea agreement by dismissing Count Two and incorporating supervised release terms the district court recognized came from the agreement. Considering these actions and the fact the district court otherwise operated within the terms of the plea agreement, we are convinced the district court constructively accepted the plea agreement, and the failure to expressly announce its acceptance was not a clear or obvious legal error. *See, e.g.*, *Brown*, 571 F.3d at 694–95 (holding that while "the better practice under Rule 11(c) would be for the district courts to explicitly indicate the status of plea agreements," it was not plain error to fail to do so, particularly when the record indicated such acceptance occurred).

Even if Pineda could establish a plain error, her efforts to show it affected her substantial rights fall flat. To meet this prong of the plain error test, the appellant typically must demonstrate the error affected the outcome of the district court proceedings. *Wells*, 63 F.4th at 1185. Pineda has not shown how the district court's failure to expressly pronounce that it accepted the plea agreement affected the outcome of the proceedings. She argues that "if the court had accepted the agreement, it would and should have permitted the Government to fulfill its obligation under the agreement to move for dismissal of Count Two of the indictment." But contrary to her suggestions, the final judgment explicitly says this obligation has been fulfilled—Count Two has been dismissed. Pineda speculates that because of the district court's failure to expressly accept or reject the plea agreement, "the Government may not be obligated to abide by the provision under which it agreed that no other federal charges arising out of activities described in the indictment would be brought against Pineda in the future." But considering the government asserts, and we agree, that the district court constructively accepted the plea agreement, any such effort by the government to avoid its obligations for this reason would fail.[3]

---

[3]Pineda also makes a passing argument that "[i]f the district court decided to reject the agreement, [she] would have been permitted the opportunity to withdraw her guilty plea." Notably, she never sought to withdraw her guilty plea below, nor

**B.**

We next address the substantive reasonableness of the 32-month sentence, which we review under a "narrow and deferential" abuse-of-discretion standard. *United States v. Feemster*, 572 F.3d 455, 464 (8th Cir. 2009) (en banc) (quoting *United States v. Gardellini*, 545 F.3d 1089, 1090 (D.C. Cir. 2008)). An abuse of discretion occurs when the district court "(1) fails to consider a relevant factor that should have received significant weight; (2) gives significant weight to an improper or irrelevant factor; or (3) considers only the appropriate factors but in weighing those factors commits a clear error of judgment." *Id.* at 461 (quotation omitted).

Pineda argues she was "a single mother with a traumatic past" and "no formal education to speak of," contending she "was doing the best that she knew how to escape a life of poverty and abuse to try to act as the sole provider of a better life for her children." She suggests that despite the district court purportedly recognizing these mitigating circumstances, the district court did not give them "any actual weight."

To the contrary, the record shows the district court gave significant weight to what it characterized as "a tremendous body of mitigating context and circumstances." On more than one occasion, the district court described Pineda's story as "an extremely compelling" one, in which "a woman who was born . . . [and] raised in abject poverty" and initially came to the United States legally "to seek the American dream and to make a better life." The district court observed that "[f]or the past 18 or 19 years, Ms. Pineda ha[d] worked very hard to become integrated into society in the United States[,]" found employment, worked hard, raised a family, and sought to "provid[e] her children with all of the advantages of being raised in America." And the district court noted Pineda appeared to be a "very nice person whose overriding motives were good." Indeed, it was these "extensive" mitigating

does she claim she wants to on appeal. She simply speculates the district court may have acted in a way that would have given her opportunity to do so. We will not reverse based on such an underdeveloped argument.

-8-

circumstances "juxtaposed to all the aggravating circumstances" that caused the district court to view its sentencing decision as "extremely difficult." On this record, it is evident the district court considered and gave weight to the mitigating circumstances Pineda highlights on appeal.

Pineda also challenges the district court's weighing of the § 3553(a) factors. But Pineda's "disagreement with how the district court weighed the factors does not demonstrate abuse of discretion." *United States v. McSmith*, 968 F.3d 731, 737 (8th Cir. 2020). Here, relying on unobjected-to facts in the PSR and reasonable inferences from those facts, the district court found that Pineda, when living as A.E. over many years, "very likely committed a number of other felonies and . . . impacted an actual victim's life." The district court highlighted that Pineda caused A.E. harm by stealing her identity, fraudulently obtaining a driver's license and then receiving traffic citations in A.E.'s name, registering to vote and voting in elections as A.E., incurring debt that turned into judgments against A.E., and committing fraud both when filing for bankruptcy and obtaining a mortgage.[4] The district court also noted the fact Pineda *continued* to use her fraudulent identity even after she was confronted by investigators with her passport application. Combined with the need for specific and general deterrence and considering the other § 3553(a) factors, the district court concluded the aggravating factors present in Pineda's offense conduct warranted a sentence above the recommended range. This determination was within the district court's considerable discretion.

The fact that both the government and the Guidelines suggested a lower sentence does not change our conclusion. "Even when the government has recommended a [G]uidelines range sentence, rather than a variance, 'it is the district

---

[4]As Pineda acknowledged in the plea agreement, it was not improper for the district court to consider the uncharged conduct when sentencing Pineda. *See United States v. Hogue*, 66 F.4th 756, 765 (8th Cir. 2023). We also do not agree with Pineda's assessment that the district court's decision to vary upward was driven solely by uncharged conduct. The district court also relied on the nature and the consequences of the offense to which Pineda pled guilty.

court judge, not the [g]overnment, that is responsible for determining the appropriate sentence for a criminal defendant after considering the factors of section 3553(a).'" *United States v. Bell-Washington*, 125 F.4th 870, 874 (8th Cir. 2025) (quoting *United States v. Hubbs*, 18 F.4th 570, 573 (8th Cir. 2021)). Although the sentence imposed is a sharp increase from her advisory range, and could be viewed as harsh in light of the mitigating circumstances, we note it was well below the ten-year statutory maximum. Regardless of how different judges might have weighed the relevant factors, our review of the record and the district court's explanation satisfies us this is not "the unusual case when we reverse a district court sentence—whether within, above, or below the applicable Guidelines range—as substantively unreasonable." *Feemster*, 572 F.3d at 464 (quoting *Gardellini*, 545 F.3d at 1090). "While some judges might have imposed less, [Pineda] has not shown the sentence imposed was an abuse of discretion." *United States v. Pierson*, 73 F.4th 582, 592 (8th Cir. 2023).

### III. Conclusion

We affirm the district court's judgment.

_____